IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KERIUM ALLEN GARRICK, SR., | |
|---|---|
| Plaintiff, | |
| v. | CIVIL ACTION NO. 16-2580 |
| CITY OF PHILADELPHIA, et al., | |
| Defendants. | |

**OPINION**

**Slomsky, J.**  **January 30, 2018**

## I. INTRODUCTION

On April 25, 2016, Plaintiff Kerium Allen Garrick, Sr. ("Plaintiff"), proceeding pro se, initiated this action under 42 U.S.C. § 1983 against Defendants City of Philadelphia, Corizon Medical, and Corizon Health, Inc. ("Defendants").[1] (Doc. No. 1 at 16.) In his Amended

---

[1] Plaintiff initially filed this action against the City of Philadelphia, Curran-Fromhold Correctional Facility of the Philadelphia Prison System, Philadelphia Industrial Correction Center of the Philadelphia Prison System, Corizon Medical, and Corizon Health. (Doc. No. 1.) On May 25, 2016, Defendants removed the case to this Court. (Doc. No. 1.) On June 17, 2016, Defendant Corizon Health, Inc. filed a Motion to Dismiss. (Doc. No. 8). On June 21, 2016, Defendants City of Philadelphia, Curran-Fromhold Correctional Facility, and Philadelphia Industrial Correctional Center also filed a Motion to Dismiss. (Doc. No. 10.) On October 12, 2016, Plaintiff filed a Motion to Strike the Defendants' Motions to Dismiss (Doc. No. 15), which the Court construed as a Response to the Motions to Dismiss. See Higgs v. Atty. Gen. of the United States, 655 F.3d 333, 339 (3d Cir. 2011) (stressing that pro se pleadings must be construed liberally).

On December 7, 2016, the Court issued an Order dismissing all claims against defendants without prejudice and permitted Plaintiff to file an Amended Complaint. (Doc. No. 18.) The Court explained that neither the Curran-Fromhold Correctional Facility nor the Philadelphia Industrial Correctional Center possessed a legal existence separate from that of the City of Philadelphia, thereby terminating the two correctional facilities as Defendants. (Id.)

Complaint,[2] Plaintiff asserts claims of unlawful imprisonment, speedy trial violations, and inadequate dietary and medical attention during his incarceration. (Id. at 16-17.)

Currently before the Court are two Motions to Dismiss Plaintiff's Amended Complaint, filed by Corizon Health, Inc.[3] and the City of Philadelphia. (Doc. Nos. 25 and 27.) On July 17, 2017, Plaintiff filed a Petition/Motion to Dismiss Defendants' Motion for Statement of Claim in Violation of Plaintiff's Constitutional Rights. (Doc. No. 32.) The Court will construe Plaintiff's Petition/Motion as a Response in Opposition to the Motions to Dismiss. For reasons that follow, the Court will grant Defendants' Motions to Dismiss.

## II.  FACTUAL BACKGROUND

Plaintiff Kerium Allen Garrick, Sr. is a former prisoner of the Philadelphia Prison System and brings this suit against the City of Philadelphia, Corizon Medical, and Corizon Health, Inc. (Doc. No. 1.) He alleges that Defendants violated his constitutional right to a speedy trial and unlawfully detained him for an extended period of time. He also claims that Defendants failed to provide adequate medical treatment while he was incarcerated. (Id.)

Plaintiff was incarcerated at the Curran-Fromhold Correction Facility and the Philadelphia Industrial Correctional Center (Doc. No. 20), both of which are part of the Philadelphia Prison System (Doc. No. 10 n.1). He claims that the maximum holding time in

---

[2] On December 21, 2016, Plaintiff filed an appeal of the Court's December 7, 2016 Order to the United States Court of Appeals for the Third Circuit. (Doc. No. 20.) On March 22, 2017, the Court of Appeals dismissed the appeal for lack of appellate jurisdiction and directed the district court to construe Plaintiff's appeal as his Amended Complaint. (Doc. No. 21.)

[3] Plaintiff names both Corizon Medical and Corizon Health, Inc. as Defendants. Corizon Medical did not join the other Defendants in filing a Notice of Removal (Doc. No. 1), nor has it filed any documents in this case. A Notice of Appearance was filed by Alan S. Gold, Esquire on behalf of Corizon Health, Inc., which did not refer to Corizon Medical. (Doc. No. 7.) Based on these filings, it appears that Corizon Medical is not an actual entity. Accordingly, the Court will refer only to the City of Philadelphia and Corizon Health, Inc. as Defendants in this case, and Corizon Medical will be terminated as a defendant on the docket.

these facilities is two years. (Doc. No. 20 at 1.) Despite this, Plaintiff asserts that he was unlawfully placed into, and remained in, custody without bail for nearly four years. (Id. at 3.) Plaintiff does not clarify how long he was housed at each separate facility. Although he had two cases open from 2007 and 2008, Plaintiff did not go to trial until February 2016, which he alleges were in violation of the statute of limitations and his speedy trial rights.[4]

He also claims that, while incarcerated, on more than three occasions, he was "denied medical attention/or medicine/or food/or the medical help required to be cared for by a licensed doctor or medically licensed doctor or surgeon." (Id. at 2.) Plaintiff complains that he was denied food "for almost 16 months because of [his] seafood allergy."[5] (Id.) Evidently, he was told that he had the option to buy commissary on days when seafood or fish were served, but contends that instruction should be regarded as "a violation and also an abuse of power, not to mention medical neglect." (Id. at 2-3.)

In addition, Plaintiff alleges that he was denied adequate medical attention for gangrene that he contracted on his right ring finger. (Id. at 3.) He had submitted sick call slips describing the color and pain scale of the skin condition. (Id. at 4; Doc. No. 1-4 at 6-10.) Plaintiff was taken to Frankford Hospital, where he was diagnosed and informed that he would need surgery. (Doc. No. 20.) However, the transporting correctional officer said that he did not have time to

---

[4] Plaintiff argues that the scheduling of his trial date approximately eight to nine years after charges were filed against him violated "the statute of limitations specified under court and under law." (Doc. No. 20 at 3.) However, upon examination of his argument challenging the extended date of his trial schedule, the Court will construe his claims as violations under the Pennsylvania speedy trial statute.

[5] Although he claims that he was "denied food for 16 months," Plaintiff also submits that he was "starved. . . every Friday when [the correctional facility] served seafood/fish." (Doc. No. 20 at 2.) Based on this statement, it appears that Plaintiff only was unable to consume the pescatarian meals served on Fridays.

3

stay during the procedure and could not remove Plaintiff's handcuffs for the surgery. (Id.) Although Plaintiff was told that another correctional officer would bring him back to the hospital later that night, no one ever transported him back for the procedure.[6] (Id.)

## III. LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Hassen v. Gov't of V.I., 861 F.3d 108, 115 (3d Cir. 2017) (quoting Thompson v. Real Estate Morg. Network, 748 F.3d 142, 147 (3d Cir. 2014). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no

---

[6] The Amended Complaint does not state the time frame in which Plaintiff contracted gangrene and went to Frankford Hospital. However, upon review of sick call request slips and a December 31, 2012 letter from Plaintiff's former counsel, Jason Kadish, Esquire, submitted in his original Complaint (Doc. No. 1-4 at 4), Plaintiff alerted prison medical staff of his condition eleven times from approximately December 31, 2012 to February 3, 2013. (Id. at 4-10.) With the exception of one sick call request, the Court cannot verify whether these slips were received by the medical unit.

4

more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Additionally, "[a] document filed pro se is to be liberally construed, and a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that the pro se case could not be dismissed on the ground that the petitioner's allegations of harm were too conclusory) (internal quotations and citations removed). Nevertheless, even pro se plaintiffs must comply with the Rules of Civil Procedure when drafting a complaint.

IV. ANALYSIS

In the Amended Complaint, Plaintiff brings a Sixth Amendment claim, an Eighth

5

Amendment claim and a Fourteenth Amendment[7] substantive due process claim against Defendants pursuant to 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). The Amended Complaint specifically alleges: (1) Plaintiff was detained for an unlawfully prolonged period of time at two Philadelphia correctional facilities resulting from the violation of his right to a speedy trial; and (2) Plaintiff was denied adequate medical attention, including receiving meals to accommodate his seafood and fish allergy and receiving treatment for gangrene on his right ring finger. (Doc. No. 20 at ¶¶ 3, 6-7, 12.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to dismiss the Amended Complaint. (Doc. No. 37.) The Court will address each of Plaintiff's claims in turn.

### A. Fourteenth Amendment Claim Against the City of Philadelphia

Plaintiff argues that he was unlawfully detained at two Philadelphia prison system facilities. He asserts that the reason for his detention stemmed from his two cases in the Court of Common Pleas of Philadelphia County. According to Plaintiff, these cases were not handled expeditiously, amounting to an infringement of his right to a speedy trial. Specifically, Plaintiff alleges that his pretrial incarceration was not to exceed two years; however he remained in custody for nearly four years. (Doc. No. 20 at ¶ 8-11.) He also claims that "the city allowed [him] to not be bailable [sic] for almost (4) years." (Id. at ¶ 5.)

---

[7] The Eighth Amendment protection from cruel and unusual punishment applies to convicted prisoners, whereas the Fourteenth Amendment right to personal bodily integrity protects pretrial detainees who are in custody but have not yet been convicted of a crime. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). It is well-settled that pretrial detainees are entitled to as much protection as convicted prisoners. Hubbard v. Taylor, 399 F.3d 150, 165 (3d Cir. 2005). The Third Circuit has consistently held that when proceeding under the Fourteenth Amendment, the Eighth Amendment serves as a useful analogy. See, e.g., Boring, 833 F.2d at 471-72; King v. County of Gloucester, 302 F. App'x 92, 96-97 (3d Cir. 2008).

### 1. Plaintiff Has Not Plausibly Alleged a Claim Against the City of Philadelphia

A municipality may be held liable under Section 1983 for action that unconstitutionally implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To establish a Section 1983 claim, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under color of state law. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002). A plaintiff seeking to hold a municipal entity liable under Section 1983 "must demonstrate that the violation of rights was caused by the municipality's policy or custom."[8] Thomas v. Cumberland County, 749

---

[8] Municipal entities cannot be held responsible for the acts of employees under a theory of respondeat superior or vicarious liability. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, a plaintiff who seeks to hold a municipal entity liable must demonstrate that the violation of constitutional rights was caused by the municipal entity's policy or custom. Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).

Not all state action will rise to the level of a policy or custom. Natale, 318 F.3d at 583. A government policy is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 177 (3d Cir. 2013) (quoting Natale, 318 F.3d at 584). In contrast, a custom is "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." Id. (quoting Natale, 318 F.3d at 584).

There are three situations where acts of an employee "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale, 318 F.3d at 584. The first is where the appropriate entity promulgates a generally applicable statement of policy and the subsequent acts complained of is simply an implementation of that policy. Id. (citing Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 417 (1997)). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. The third situation arises when "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of

F.3d 217, 222 (3d Cir. 2014). However, a municipal entity may not be held liable under Section 1983 for constitutional violations caused solely by its employees or agents under the theory of respondeat superior. Id. at 690. The municipality is only liable if the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Bielevicz v. Dubinon, 915 F. 2d 845, 850 (3d Cir. 1990) (citing Monell, 436 U.S. at 694).

Here, Plaintiff asserts that "the city allowed [him] to not be bailable [sic] for almost four years." (Doc. No. 20.) He also mentions that he was "starved. . . every Friday" while in the Philadelphia prison system because he did not receive a meal which accommodated his seafood allergy. (Id. at ¶ 7.) Plaintiff avers no other contentions against the City of Philadelphia. He fails to raise any facts that describe a municipal policy or custom to invoke liability under Monell. Plaintiff also fails to identify any municipal policymaker or decisionmaker responsible for the alleged unconstitutional conduct. Instead, the Amended Complaint simply contains conclusory statements charging illegal and unconstitutional conduct and that "all defendants are guilty of the violations filed against them and the burdens of proof are furnished." (Id. at ¶ 5.)

These allegations are insufficient to meet the "'rigorous standards of culpability and causation' required to state a claim for municipal liability." Wood v. Williams, 568 F. App'x 100, 104 (3d Cir. 2014) (citations omitted). No policymaker or official who created an unlawful policy or custom has been identified. Moreover, there is an absence of plausible allegations of an established policy or custom. Therefore, because Plaintiff has failed to establish a claim for relief against the City of Philadelphia, the claim against this Defendant will be dismissed.

---

constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (alteration in original) (quoting Bryan Cty., 520 U.S. at 417-18).

## B. Sixth Amendment Claim Against the City of Philadelphia

In his Amended Complaint, Plaintiff tangentially refers to an unidentified "District Attorney or (ADA) for the city" who allegedly stated that pretrial incarceration similar to that of Plaintiff's—that is, being in custody from approximately 2007 to 2016—violates speedy trial rights afforded to criminal defendants. (Doc. No. 20 at ¶ 11.)

### 1. Plaintiff Has Not Plausibly Alleged a Violation of the Speedy Trial Act

Under Pennsylvania's speedy-trial statute, a criminal defendant generally must be brought to trial within 365 days from the date on which a complaint is filed. Pa. R. Crim. P. 600. The statute provides for periods of delay which are not to be counted in computing the time in which a trial must begin, including delays caused by the defendant or delays caused by the state prosecution where it has exercised due diligence. Id.

Plaintiff attached his criminal docket in his original Complaint,[9] showing his case management history before the Court of Common Pleas of Philadelphia County. Plaintiff was a defendant in three criminal cases before the Court of Common Pleas. (Doc. Nos. 1-1 at 8-29; 1-2; 1-3 at 1-19.) Upon review of the provided state court dockets, it appears that there were multiple motions for continuances and motions to withdraw and appoint counsel, as well as state court orders directing Plaintiff to be evaluated for mental incompetency. (Doc. No. 1-1 at 13-25; 1-2; 1-3 at 1-17.)

Without more facts as to the reasons the state court granted continuances, this Court will not presume as to the reasons why Plaintiff's trial date was scheduled over four years after his initial arrest. Consequently, Plaintiff has not sufficiently pled facts to show that his right to a

---

[9] Although the Court generally would not consider an original Complaint after an amended version is filed, because Plaintiff is proceeding pro se and did not formally file an Amended Complaint, the Court will also consider attachments to his original Complaint for the purposes of adjudicating the Motions to Dismiss.

speedy trial under the Pennsylvania speedy trial statute, and most importantly, under the Sixth Amendment to the United States Constitution, was violated. Accordingly, any claims concerning his Sixth Amendment speedy trial rights will be dismissed.

### C. Plaintiff Has Not Alleged a Plausible Claim Against Corizon Health, Inc.

In his claim against Defendant Corizon Health Inc., a private healthcare contractor, Plaintiff alleges that he suffered a violation of his Eighth Amendment right to receive adequate medical care pursuant to Section 1983. Section 1983 provides a cause of action against every person who under color of state law deprives another person of a federally protected right. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014). To plead an Eighth Amendment claim based on the denial of medical care, an inmate must first plausibly allege that the defendants were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

The Supreme Court has explained that, under the Eighth Amendment, a defendant exercising deliberate indifference is one who

> knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn and that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A private corporation contracted by a prison to provide health care for inmates "can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." Reiss v. Smith, 1:CV-12-2089, 2013 WL 2896832, at *3 (M.D. Pa. June 12, 2013).

Second, plaintiff must demonstrate "an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (citing Rouse v.

Plantier, 182 F.3d 192, 197 (3d Cir. 1999)) (holding that plaintiffs need to show defendants acted with deliberate indifference to medical needs and that those needs were serious to show Eighth Amendment violation).

Accordingly, merely receiving inadequate medical care is insufficient to show deliberate indifference on the part of healthcare service providers. A plaintiff must demonstrate that the defendant healthcare service providers acted with the requisite state of mind—deliberate indifference—when providing that inadequate care. Pearson, 850 F.3d at 536 (citing Durmer O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (holding that summary judgment can only be denied if there is a genuine issue of fact as to both the adequacy of medical care and defendant's intent).

Plaintiff claims that he received inadequate medical treatment at the correctional facility or facilities where he was incarcerated. Though only named in the case caption and not referred to in the Amended Complaint, Defendant Corizon Health, Inc. is presumably the target of Plaintiff's medical-related grievances. Defendant Corizon Health is a private corporation contracted to provide healthcare services to inmates at Philadelphia correctional facilities. Therefore, Defendant Corizon Health can only be held liable if Plaintiff set forth evidence that Corizon implemented or executed a policy or custom exhibiting deliberate indifference to prisoners' medical needs.

The Third Circuit has held that "when medical care is provided, [it is] presumed that the treatment of a prisoner is proper absent evidence that is violates professional standards of care." Pearson, 850 F.3d at 536 (quoting Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990)). Here, the Amended Complaint is devoid of any such arguments that Defendants intentionally provided Plaintiff with inadequate medical attention. The Amended Complaint shows that Plaintiff received medical attention at a hospital when he was transported there for the

11

treatment of his gangrene only a week after he submitted sick call slips alerting Defendant and/or prison officials to his condition. (Doc. No. 20 at ¶ 13.) Plaintiff does not provide any facts to demonstrate that the medical care lacked a professional standard of care, nor does he show how Defendant knew of and consciously ignored a serious risk to his health. In fact, the record shows that Defendant sent him to the hospital upon receipt of his sick call slips. Therefore, it cannot be said that Defendant ignored Plaintiff's medical needs.

Furthermore, as mentioned above, a successful 1983 claim requires a plaintiff to point to a policy where a "decision-maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Natale v. Camden Cnty Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citations omitted). Additionally, there must also be a nexus linking the policy or custom and the alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff has not alleged any facts identifying and describing a policy or custom of Defendant Corizon Health, Inc. which caused his alleged constitutional injuries. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (finding that plaintiff's Eighth Amendment claim was properly dismissed where his complaint did not allege that the jail had a policy of denying inmates medical treatment, or "that other inmates suffered similar deprivations of medical attention that might establish a custom"). Although Plaintiff mentions the correctional officer who accompanied him to Frankford Hospital and then later refused to allow him to receive a surgical procedure, he fails to identify any individual from Corizon Health, Inc. who made the decision or knew about the decision. It appears that Defendant Corizon Health, Inc. was providing health care and was not deliberately indifferent to his medical needs.

Accordingly, Plaintiff has not established that anyone affiliated with his medical claims acted with deliberate indifference to his medical needs, or that Corizon Health, Inc. had a policy or custom exhibiting deliberate indifference. "Deliberate indifference [] requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Harper v. Corizon, No. 14-cv-0639, 2015 WL 1608434, at *3 (E.D. Pa. Apr. 10, 2015) (internal quotations and citations omitted). It is well settled that claims of negligence without a more culpable state of mind do not amount to deliberate indifference. Estelle, 429 U.S. at 106.

Consequently, Plaintiff's Eighth Amendment claim fails, and the claim against Corizon Health, Inc. will be dismissed.

## V. CONCLUSION

For all the foregoing reasons, Defendants' Motions to Dismiss (Doc. Nos. 8, 12) will be granted and Plaintiff's Amended Complaint (Doc. No. 20) and Plaintiff's Petition/Motion to Dismiss Defendant's Motion for Statement of Claim in Violation of Plaintiff's Constitutional Rights (Doc. No. 32) will be dismissed. An appropriate Order follows.